**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Elonzo H. VAN HOOSE, Appellee.**

No. 14068.

Court of Civil Appeals of Texas.

San Antonio.

May 1, 1963.

Rehearing Denied May 29, 1963.

Lewright, Dyer & Redford, James W. Wray, Jr., Walter Dunham, Jr., Corpus Christi, for appellant.

Jean Day, Port Lavaca, for appellee.

MURRAY, Chief Justice.

This is a workman's compensation case. Based upon a jury verdict, Elonzo H. Van Hoose recovered judgment against Texas Employers' Insurance Association in the sum of $2,596.37, for a fifty per cent loss of use of his right arm below the elbow, from which judgment Texas Employers' Insurance Association has prosecuted this appeal.

Appellant's first contention is that there is "no evidence to support the jury's finding that the Appellee will have a 50% permanent partial loss of use of the hand," and in any event such finding "is so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust."

The evidence shows that appellee received an accidental injury to his right hand on December 5, 1960. He was working as a machinist for Bauer Dredging Company, Inc., in Calhoun County, at the time of the injury. He was working forty-five hours a week and earning $2.10 an hour, with time and a half for overtime. He was injured while tightening a tool post with a wrench when his foot slipped. All of his weight was on his right hand at the time, and he felt something popping in his right wrist and it stunned him for a while. He had to just stand there for a little while.

He heard it pop; it hurt around his whole wrist, but the pain was more on the thumb. He did not think it serious enough to go to a doctor, but did report it to his employer. His hand kept hurting but he continued to work for close to a month. He went to a doctor on January 4, 1961, because his wrist really started hurting him again. His wrist troubled him during the month he continued to work, but he did not have occasion to do any real hard work during that time. He went to Dr. Lester, after reporting to Adolph Melchar, his immediate superior, that his wrist was hurting, and the doctor told him he had a ligament pulled loose in his wrist. He testified that he was immediately laid off by Melchar, and was unable to find another job for several months. He finally got a job with Jimmy Payne in Lolita as a roustabout doing odd jobs. His pay was $1.25 an hour. He was compelled to work in order to support his wife and three children. He did not tell any one about his injury, and no one discovered it. He was afraid to complain because he feared he would lose his job as he did with Bauer Dredging Company.

Appellee left the job with Jimmy Payne for a better job with Barrett Manufacturing Company in Houston, as a machinist at $2.50 an hour. This job did not involve big equipment as did his job with Bauer Dredging Company. His hand hurt him all the time. He left the job with Barrett because there was not enough work to keep him busy. He was not earning enough money. Appellee next got a job with Brown and Root as a machinist. He took a pre-employment physical examination by a doctor selected by Brown and Root. He was paid $3.39 an hour, but was laid off because there was not enough work. While he was working no one discovered he had an injured right wrist. Later, he again got a job with Brown and Root as a welder's helper at $2.00 an hour. His hand hurt while doing this work, but not as bad as it did while working at his regular trade, because the work was not as heavy. He held this job until about two weeks before the trial.

He told no one about his sore hand because he was afraid that if he complained he would be laid off.

After leaving that job he secured employment with Conti Machine & Welding in Victoria, and is still employed there. He earns $1.75 an hour and works five and a half days, or forty hours, a week. On this job he does welding, painting, straightening bent metal, and some machinist work. The painting work causes his hand to harden up inside and become numb. He has to stop about every hour for five or six minutes and massage his hand. It also causes his hand to hurt when straightening bent metal even more than painting. He doesn't have the grip he used to have and cannot work as fast. The hand seems to be getting worse. He could not do some of the lifting required as a machinist, that he could do before the accident; he could not put a strain on wrenches or things of that nature as before; he would be required to use his left hand; he did not think he could do the heavy work he was doing at Bauer Dredging Company; he had not complained on the jobs he had, because he was afraid he would lose the job.

Dr. S. W. Lester, who was a doctor for Bauer Dredging Co., and also appellee's family doctor, testified that he made an examination of appellee's right wrist on January 4, 14 and 16, 1961. He found no swelling in the wrist. Appellee complained to him of pain in his right wrist and tenderness to pressure. There was no swelling, redness or stiffness apparent at the time. The range of motion was normal, but appellee testified it was painful. Appellee also complained of pain on palpation over the radial aspect of the wrist. The doctor injected some hydrocortisone into the wrist joint. There were no objective signs of any permanent injury when the doctor examined appellee on January 27, 1962. There were no visible signs of atrophy in his right arm. On January 4, 1961, the doctor diagnosed the injury as a probable sprain of the wrist and an injury to one of the supporting ligaments of the wrist joint. There

were signs of Dequarvanes disease, but the doctor concluded that appellee did not have this condition. Dr. Lester concluded: "Ordinarily a sprain will clear up completely. You can't specify any given length of time but usually a sprain will clear up completely." On cross-examination Dr. Lester testified that it would be possible for a sprain not to heal up if there was a severe tear of the ligament, and that it might be possible for a sprain not to heal.

The appellee called as witnesses, Mrs. Norma Chambers, Richard A. Moses, and Mrs. Ann Vickery, but their testimony sheds very little light upon the question here raised.

■ We conclude that the evidence set out above constitutes some evidence of probative force tending to support the finding of the jury that appellee had sustained a 50% permanent injury to his right wrist. Texas Employers' Insurance Ass'n. v. Fletcher, Tex.Civ.App., 356 S.W.2d 359; American General Ins. Co. v. Florez, Tev.Civ. App., 327 S.W.2d 643.

We have considered all of the testimony and conclude that the findings of the jury are not so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust. Cunningham v. Texas Employers' Ins. Ass'n., Tex.Civ.App., 363 S.W.2d 880.

In its motion for new trial, appellant set up among other things that the jury was guilty of misconduct because it was stated and argued in the jury room, during their deliberations, that appellee was only suing for the sum of $1,000.00, and that if they allowed him 50% disability he would only receive the sum of $500.00. The trial court made and filed findings of fact as to this matter as follows:

"I. In the course of the jury's deliberations there was some discussion by some jurors to the effect that the maximum amount for which the Plaintiff was suing was $1,000.00 and that a verdict of 50% permanent partial loss of use of the hand would result in a judgment for $500.00, or 50% of the maximum amount being sued for.

"II. Such discussions were had by the jury prior to the answering of Special Issues Nos. 5 through 9.

"III. The statements made in connection with such discussions found in Findings I and II above were not rebuked or qualified by the foreman, or any other juror.

"IV. The foregoing discussion by the jury was misconduct but did not cause probable harm to the defendant."

■ We agree with the court in overruling appellant's motion for a new trial. The testimony shows at most that some of the jurors were mistaken as to the amount that appellee was suing for, and therefore what he would receive if they allowed a 50% disability. The plaintiff plead that he was entitled to recover in excess of $1,000.00, and some of the jurors understood from this that all that he was asking for was $1,000.00. Based upon the jury's answers, the trial court rendered judgment in the sum of $2,596.37. The jury was not required to find any specific sum of money, but only to answer as to percentage of disability. The fact that the jury got confused as to the pleadings or the evidence does not require that their verdict be set aside. It involves nothing more than the mental processes of the jury. The evidence does not show that the jury entered into an agreement as to what appellee should receive and then agreed to answer the issues so as to put their agreement into effect. In the absence of such an agreement, the mistaken idea of some of the jurors as to what sum would ultimately be recovered by appellee does not call for a setting aside of the jury's verdict. Whited v. Powell, 155 Tex. 210, 285 S.W.2d 364; Ford v. Carpenter, 147 Tex. 447, 216 S.W.2d 558; Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62; Trousdale v. Texas & N. O. R. Co., Tex.Civ.App., 264 S.W.2d 489, af-

firmed 154 Tex. 231, 276 S.W.2d 242; W. W. Auto Parts, Inc. v. Hyak, Tex.Civ.App., 346 S.W.2d 918; 12 Baylor Law Review 355, "Jury Misconduct and Harm"; 40 Texas Law Review 849, "The Mental Operations of Jurors."

The judgment is affirmed.