Robert **CARTER** et al., Appellants,

v.

Mary Jones **CARTER** et vir, Appellees.

No. 532.

Court of Civil Appeals of Texas, Tyler.

April 8, 1971.

Rehearing Denied May 6, 1971.

Bill F. Griffin, Jr., John S. Walker, McLeroy & McLeroy, Tom McLeroy, Center, for appellants.

Fairchild, Hunt & Price, Robert Fairchild, Center, for appellees.

DUNAGAN, Chief Justice.

This suit was filed by appellants, Robert Carter and wife, Mary Carter, against Mary Alice Jones Carter, their daughter-in-law, and by appellants, L. S. Jones, and wife, Alyrene Jones, against Mary Alice Carter and husband, Aaron Lewis Carter, their daughter and son-in-law, to recover for the wrongful deaths of Patsy Ann Carter, age 13, Kelly Ray Carter, age 3, and Rosalyn LaRuth Jones, age 9, (Patsy Ann and Kelly Ray Carter were the children of Robert Carter and Mary Carter, and Rosalyn LaRuth Jones was the daughter of L. S. Jones and Alyrene Jones), as a result of an automobile collision between a 1967 Mercury Cougar driven by appellee, Mary Alice Jones Carter, in which the deceased children were riding and a 1951 GMC pickup driven by Oscar Yarbrough within the city limits of Timpson, Texas, on August 20, 1967. Trial was before a jury.

The jury found that appellee Mary Jones Carter (1) failed to keep a proper lookout, (2) drove the car in excess of 70 m. p. h. immediately before the collision, (3) drove at an excessive rate of speed, (4) failed to apply the brakes of the car in time to avoid the collision, (5) did not drive to the left-hand side of the highway, and further found that the collision was not the result of an unavoidable accident, but found that none of the acts in themselves was "gross negligence." The jury found the amount of damages to be $8,625.00 for the death of each child.

After the jury verdict, but before entry of judgment, appellees moved for a judgment based on the verdict of the jury; appellants filed their motion for mistrial supported by the affidavits of five jurors based upon alleged misconduct of the jury in considering evidence, specifically by considering statements and testimony of a material nature not admitted before them. The complained of statements were made by one or more jurors during the jury's deliberation to the effect that it was immaterial how the jury answered the "gross negligence" issue because appellants would recover anyhow because the jury had already answered "yes" to the primary fact issues; that if the jury found appellee guilty of "gross negligence" it would be like convicting her of a crime and might cause her to be prosecuted in a criminal case. Appellants assert that after such statements jurors Lloyd Fleming and Voyd Hughes changed their vote on the "gross negligence" issue to "no".

A full hearing was had upon such motion for mistrial and testimony of jurors taken thereon which is before this court.

The court, in the judgment entered in the case, made specific findings of fact that the statements were made and that such misconduct did cause the jurors Fleming and Hughes to change their vote on the

"gross negligence" issue. However, the court further found that there was no evidence of probative force to raise the issue of "gross negligence", and for such reason no harm resulted to appellants from such misconduct, and that therefore appellants' motion for mistrial should be overruled. Appellants excepted to this finding of the court.

After entry of the judgment, appellants filed their motion for new trial, setting up the same allegations of jury misconduct as grounds therefor. By agreement of the parties the same testimony heard on the motion for mistrial was agreed to be considered as having been heard on the motion for new trial.

The court overruled the motion for new trial and made and filed specific findings of fact and conclusions of law thereon. Such findings and conclusions are the same as recited in the original judgment. Appellants also duly excepted to the court's finding that there was no evidence sufficient to raise the issue of "gross negligence." Appellants have timely and duly perfected their appeal to this court.

Both the names Mary Alice Jones Carter and Mary Jones Carter are found in the record before us. They are one and the same person. Hereafter she will be referred to as Mary Alice.

Appellants have brought forward 6 points of error; however, all of the points are directed at the alleged error of the trial court in finding no evidence to raise the issue of "gross negligence" on the part of Mary Alice.

Appellees by their cross-points assert that the trial court erred in finding that there was jury misconduct because there was no evidence of probative force to support such finding. Appellees also contend that even if there was jury misconduct it did not result in probable harm, which was appellants' burden to prove.

Even though we agree with the trial court's conclusion that such misconduct (if any) was immaterial "because there was no evidence of probative force to raise the issue of gross negligence," we think there is a more compelling reason supporting the trial court's action in overruling appellants-plaintiffs' motion for a new trial.

On the hearing of appellants' motion for mistrial alleging jury misconduct, appellants called to the stand to testify jurors Waymon Hall, Lloyd Fleming, Voyd Hughes, F. A. Crump, J. O. McMeans, John P. Green, the foreman, and Billy Lee Thompson. Appellees called to testify three of the remaining jurors.

It seems to be undisputed that upon retiring to the jury room to deliberate their verdict, the jury's first act was to elect a foreman. Next they took up the issues that were submitted to them by the court and went over all of them to see how the jurors stood on them, but no vote was taken at the time; that only one vote was taken during their deliberation. It is also undisputed that there was no agreement as to who should win or lose, nor was there any attempt to answer the issues so any certain party or parties would win or lose. The evidence shows that while going over the issues of negligence initially, some of the jurors indicated that they thought the "gross negligence" issues should be answered "yes." Among those so indicating were Lloyd Fleming and Voyd Hughes. Other jurors indicated that such issues should be answered "no." The discussion of these "gross negligence" issues was quite lengthy. The jury was not in agreement as to what "gross negligence" meant, and upon request the foreman of the jury read the court's definition of "gross negligence" several times. Its meaning was well discussed.

Juror Fleming testified that on the first discussion of the issues two or three of the jurors indicated they favored answering the "gross negligence" issues "yes"; that during the discussion of the "gross negligence" issues it was brought up in the jury room as to whether the plaintiffs would receive anything if Mary Alice was not

charged with "gross negligence", and someone said that it doesn't make any difference whether it's gross negligence or not that the plaintiffs could still recover; that they had a good discussion about it; also there were a few that had the opinion that if they found "gross negligence" on the part of Mary Alice that she would be tried for some crime and "we didn't feel that that should be." He further testified: "When we went over that (gross negligence) two or three times and I didn't know the exact definition of gross negligence because you can look it up in the dictionary and you get 2 or 3 answers and I just never did know exactly what it meant. What it had to be." At their request the foreman read the court's instruction about six times as to what "gross negligence" was. He further testified that in answering the issues of "gross negligence" they did their best to follow the court's instruction and the evidence; that they answered each issue as they got to it; that after the discussion of the issues during which discussion the complained of statements were made he said he voted on each issue according to the court's instruction and the evidence heard from the witness stand. He also testified that after the lengthy discussion concerning the "gross negligence" issue and after the complained of statements were made, he did change his vote but that he changed his vote quite a few times on all of it.

Voyd Hughes testified that when they went over the "gross negligence" issues the first time, he and some other jurors indicated they favored voting "yes" on such issues; that other jurors felt that she was not guilty of "gross negligence;" that in the initial discussion he stated "if it wasn't gross negligence, it come very near being. It was close to it. * * * And I said that because I didn't know exactly what gross negligence consisted of." This question was propounded and the following answer given: "Q. * * * There was a difference in agreement as to what amounted to gross negligence wasn't there, when you got to that issue wasn't there? A. We

disagreed on several items but just what they were I don't remember now exactly." That during the discussion the statement was made that it was immaterial, didn't make any difference how the "gross negligence" issue was answered, the plaintiff was still going to get some money; also that the statement was made "that if she was found to be gross negligent, then she would be liable for a criminal offense, something like that." He confirmed the testimony of Fleming that the foreman read part of the charge over and over; that they asked the foreman several times to read the definition of "gross negligence"; that after the discussion and reading several times the definition of "gross negligence" and after the complained of statements were made, he did change his vote. The following question was asked and answer given on cross-examination: "Mr. Hughes, * * * you and the rest of the jurors tried to answer each issue as to how you felt the evidence dictated it should be answered and according to the court's instructions without regard to the effect of your answers on the parties involved didn't you? A. We did." Both Fleming and Hughes testified that there was not any agreement in the beginning or any other time as to who should win or lose and no attempt to do so was made.

The only conflict in the material evidence is whether the complained of statements were made, what the statements actually were, and at what stage of the deliberation they were made. For instance the foreman testified that when they reached the damage issues, after all of the "gross negligence" issues had been answered, he stated that since they had answered the "gross negligence" issue "no" that it would not be necessary to answer the damage issue; that it was at that time the statement was made that it would make no difference how they answered the "gross negligence" issues that the plaintiffs would recover anyway. This was confirmed by juror McMeans. Some of the jurors testified that this statement was made

while discussing the "gross negligence" issues.

From the time that Fleming and Hughes indicated they thought the "gross negligence" issue should be answered "yes" and they voted "no" to said issues, more occurred than merely the making of the statements complained of. There was what Fleming called a good discussion; another juror referred to as lengthy discussion of "gross negligence." Juror Hall said there was a long discussion of what "gross negligence" meant. While the jury in their attempt to determine the meaning of the definition of "gross negligence", as that term was defined by the court in its written instructions, the foreman read said definition to the jury several times.

As we view the evidence, it shows that when the issues of "gross negligence" were first reached, jurors Fleming and Hughes indicated that they thought said issues should be answered "yes"; that they did not understand what the term "gross negligence" meant; and that after a lengthy discussion and the reading several times of said definition by the foreman of the jury, they, along with the ten other jurors, voted to answer these issues "no". This was the first and only vote taken on the issues.

As we summarize the evidence, it shows that when the jury began its deliberation all of the jurors were not in agreement on the answers to the issues of "gross negligence." Then after a long discussion of the definition of "gross negligence" and what it meant, during which time the complained of statements were made in the jury room, each of the jurors came to the conclusion that the "gross negligence" issues under the instructions and definitions given by the court and the evidence admitted before them should be answered "no".

We think it not unusual in most cases, if not in every jury case, for the jury not to be in complete agreement on all issues during the initial consideration and discussion of the issues, especially a closely controverted case. It cannot reasonably be expected that a jury in every case would enter the jury room and find themselves at the beginning of their deliberation to be in unanimous agreement on all issues presented to them for their decision or as to the meaning of the definitions contained in the court's written instructions. Just because during the jury deliberation one or more of the jurors changed their position on one or more of the issues does not necessarily mean that the verdict resulted from the alleged misconduct of the jury. If so, it would be highly improbable that a lawful jury verdict would ever be obtained in a case of any magnitude. The fact remains that each of the jurors in question testified that their vote on the issues was based upon the law given and the evidence admitted by the court. Even though the jurors did discuss whether it made any difference how they answered the "gross negligence" issues that the plaintiffs-appellants would recover in view of their answers to other issues, there was no agreement to answer any of the issues so that one or more of the parties would win nor that the jury designedly attempted to frame the answers to the issues so as to accomplish such result.

■ The party alleging jury misconduct has the burden to prove the overt act of misconduct, that such misconduct was material and "from the record as a whole that injury probably resulted to the complaining party" to the extent that it was reasonably calculated to and probably did cause the rendition of an improper judgment. Rule 327, 434, Texas Rules of Civil Procedure; McIlroy v. Wagley, 437 S.W.2d 5, 11 (Tex. Civ.App., Corpus Christi, 1968, writ ref., n. r. e.); Warren v. Dikes, 404 S.W.2d 946 (Tex.Civ.App., San Antonio, 1966, n. w. h.); Fountain v. Ferguson, 441 S.W.2d 506 (Tex.Sup., 1969); City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259, 263 (1944). We think the appellants have failed to meet this burden of proof.

■ Under Rule 327, T.R.C.P., where the evidence as to whether jury miscon-

duct occurred is conflicting, it becomes an issue of fact and the decision of the trial court should be accepted as final where there is any evidence of probative force to support such finding. When misconduct is established, the question of injury or probable harm is one of law for the reviewing court. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462 (1943); Gage v. Lone Star Gas Company, 278 S.W.2d 231 (Tex.Civ.App., Austin, 1955, n. w. h.); City of Houston v. Quinones, supra; Texas Employers' Insurance Association v. Waldon, 392 S.W.2d 509 (Tex.Civ.App., Tyler, 1965); Kensinger v. McDavid, 380 S.W.2d 54, 58 (Tex.Civ.App., Houston, 1964, n. w. h.); Younger Brothers, Inc. v. Myers, 324 S.W.2d 546 (Tex.Sup., 1959); Watson v. Texas Indemnity Ins. Co., 147 Tex. 40, 210 S.W.2d 989.

It is stated in Barrington v. Duncan, supra: "A reading of the above rule (Rule 327, T.R.C.P.) will disclose that its effect is to abolish the prior rule of reasonable doubt, and substitute therefor a rule which imposes upon the party asserting misconduct the burden not only of proving by a preponderance of the evidence that such misconduct occurred, but also of showing that such misconduct probably resulted in injury to him. * * * When misconduct is established, the question of injury is one of law for the reviewing court. * * *"

In passing on the questions here presented, we have considered, as we are required to do, the evidence, both that presented at the hearing on the motion for new trial and that presented at the trial on its merits. Texas Employers' Insurance Association v. Waldon, supra; Motley v. Mielsch, 145 Tex. 557, 200 S.W.2d 622 (1947); Prudential Fire Ins. Co. v. United Gas Corporation, 145 Tex. 257, 199 S.W.2d 767 (1946); City of Houston v. Quinones, supra.

We find these statements by the Supreme Court in the case of Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62 (1945):

"It is further alleged that the jurors were guilty of misconduct in that they first determined that the employee should recover and then designedly undertook to answer the issues so as to accomplish that result.

"Only two jurors testified on this issue. One of them testified that after the jury retired it was discussed that if the issues were not answered in a given way the employee would not recover. However, this juror did not testify that any effort was made to answer the issues so as to accomplish such a result. On the contrary, he testified that each issue was answered according to the evidence and without regard as to who would recover. The other juror testified on direct examination that the issues were answered as they were in order to effectuate the purpose of enabling the employee to recover, but on cross-examination this was denied, and the juror further testified that each issue was answered according to the evidence and without regard to the results. * * *

" * * * We must assume, therefore, that while the jurors may have discussed in advance the fact that the issues would have to be answered in a given way in order to enable the employee to recover, no effort was made to carry such a purpose into effect. We must further assume that the jury answered each issue in accordance with the evidence and without regard to the results.

"The mere fact that the jurors discussed the fact that the issues would have to be answered in a given way if the employee was to recover is not alone sufficient to constitute misconduct of the jury. It must also appear that the jury designedly attempted to frame the answers to the issues so as to accomplish such a result. * * *"

The Court held that such misconduct was not sufficient to require a reversal of the case.

This court in Texas Employers' Insurance Association v. Waldon, supra, where the jury while discussing the issue in a

workmen's compensation suit as to whether the claimant's total incapacity to labor was "permanent" or temporary", some juror said they would have to answer "permanent" if the claimant would get any money. At the time of this statement the jury was divided on the issue but after the statement was made the issue was answered "permanent." It was not shown that the jury at any time agreed that the issues would have to be answered in a given way in order for the claimant to recover or that the jury attempted to carry such purpose into effect. We held that the simple fact there was jury discussion that the issue would have to be answered in a given way for claimant to recover was not alone sufficient to constitute jury misconduct; that it must also appear that the jury designedly attempted to frame the answers to the issues so as to accomplish such a result.

The Supreme Court in Ford v. Carpenter, 147 Tex. 447, 216 S.W.2d 558 (1949) stated:

" * * * However, it further appears from the testimony of the jurors on motion for new trial that no agreement was made or attempted to be carried out which would accomplish any particular result, but that each issue was answered according to the law and the evidence.

" * * * On the other hand, though a juror may entertain the opinion that one or the other of the parties to the litigation should prevail, yet, if he considers each special issue without regard to the legal effect of the answer to be made, but solely from the viewpoint of arriving at the correct conclusion under the evidence, he is not guilty of misconduct because of a preconceived opinion as to the merits of the case. * * *

" 'However, the mere agreement by members of a jury during their deliberation as to which party they think is entitled to a verdict is not alone sufficient to constitute reversible error. It must also be shown that the jury has deliberately attempted to make the same

effective by framing the answers to the issues submitted in such a way as to accomplish the desired result.' "

That brings us to a consideration of the statement of one or more jurors that if Mary Alice was found guilty of "gross negligence" it would amount to the same as convicting her of a crime, and might cause her to be prosecuted in a criminal case.

Counsel for the appellants on oral argument before this court conceded that the statement concerning a possible conviction of Mary Alice of a crime if the jury found her guilty of "gross negligence" standing alone probably would not constitute a reversible error.

In Ferguson v. Fountain, 437 S.W.2d 323 (Tex.Civ.App., Amarillo, 1968) wherein the facts showed that the three jurors testifying upon the hearing concerning alleged jury misconduct, testified that during the consideration of the defendant's issues on lookout and proximate cause that the foreman stated at least two or more times and perhaps more "(t)hat every man was innocent until proven guilty beyond a shadow of a doubt." One of the jurors in his affidavit stated: "Most of the jury voted the way they did because they didn't want 'to make a criminal of the defendant.' " The facts also show that the first two special issues relating to the defendant's lookout and proximate cause were not answered until the remaining issues, including damages, were answered. The jury had "passed over" these issues because of their inability to agree, and had come to it again only after answering the other issues. Each of the three jurors testified that upon returning to the consideration of these issues (lookout and proximate cause) that the foreman informed them it was immaterial how they answered the negligence issues as the plaintiff would receive the amount of damages they had already assessed. After this statement by the foreman, the jury proceeded to answer the proximate cause issue in the negative; that the statement of the foreman led them to vote as they did

on the negligence and proximate cause issues.

The trial court entered judgment for the defendant on the jury verdict. The Court of Civil Appeals reversed and remanded the case stating that in their opinion the statement that it was immaterial how the negligence issues were answered as the plaintiff would recover the amount of damages the jury had assessed, constituted misconduct, and that "(t)he above erroneous statement, clearly contrary to the court's instructions, was an overt act of jury misconduct." The Supreme Court accepted appeal of the case and in a unanimous opinion held that plaintiff had not discharged its burden to prove probable harm and then proceeded to reverse the Court of Civil Appeals and affirm the judgment of the trial court. 441 S.W.2d 506.

█ "The law is clear that a juror is not guilty of misconduct, and the verdict need not be set aside when one or more jurors simply misconstrue a portion of the court's charge and state the erroneous interpretation to the other members of the jury." Compton v. Henrie, 364 S.W.2d 179, 184 (Tex.Sup., 1963); Texas Employers' Insurance Association v. Van Hoose, 368 S.W.2d 131 (Tex.Civ.App., San Antonio, 1963, n. w. h.). As we view the record in this case, this is a case of an express misconstruction of the court's charge. Whited v. Powell, 155 Tex. 210, 285 S.W.2d 364 (1956); Adams v. Houston Lighting & Power Company, 158 Tex. 551, 314 S.W. 2d 826 (1958).

█ We accept the trial court's findings, as they are supported by the evidence, that the statements complained of were made; however, under the above authorities and after a careful consideration of the record before us, we do not believe, as a matter of law, that such statements complained of

constituted jury misconduct within the meaning of Rule 327, T.R.C.P. Whited v. Powell, supra; Pete-Rae Development Company v. State of Texas, 353 S.W.2d 324 (Tex.Civ.App., Eastland, 1962, writ ref., n. r. e.).

Assuming that both statements here complained of do constitute jury misconduct, we do not think that the complaining parties, in light of the entire record, have discharged their burden of showing probable injury. Trousdale v. Texas & New Orleans Railroad Co., 154 Tex. 231, 276 S.W.2d 242 (1955).

█ The trial court has considerable latitude in regard to granting a new trial for jury misconduct, and only upon a clear showing of abuse of discretion should its decision be reversed. State of Texas v. Wair, 163 Tex. 69, 351 S.W.2d 878 (1961); Costin v. Bosworth, 328 S.W.2d 235 (Tex. Civ.App., El Paso, 1959, n. w. h.); Martin v. Shell Oil Co., 262 S.W.2d 564 (Tex.Civ. App., El Paso, 1953, n. w. h.).

█ Also, under Rules 327, 434, T.R. C.P., an appellate court should not reverse the trial court's judgment for jury misconduct unless the appellate court is of the opinion that the misconduct amounted to such a denial of the rights of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. We cannot justifiably say from a consideration of the record as a whole that the misconduct complained of was calculated to cause and probably did cause the rendition of an improper judgment. Warren v. Dikes, supra; State v. O'Dowd, 158 Tex. 348, 312 S.W.2d 217.

For the above reasons the judgment of the trial court is affirmed.

Judgment affirmed.