### G. A. Johnson et al. v. D. D. Cooley.

Decided December 5, 1902.

**Trial—Witnesses Under Rule—Violation—Exclusion of Evidence.**

Where the witnesses were placed under the rule, and the defendant, who was present and himself a witness, afterwards gave his principal witness certain information as to how plaintiff had testified, and the court refused to permit such latter witness to testify at all, although the information so given him could have affected his testimony as to only one point at issue in the case, while his testimony was vitally material on all the issues, such action was an abuse of judicial discretion constituting reversible error.

Appeal from the District Court of Harris County. Tried below before Hon. Wm. H. Wilson.

*Edgar Watkins* and *Frank C. Jones,* for appellants.

PLEASANTS, Associate Justice.—Appellee brought this suit against G. A. Johnson, alleging in substance that plaintiff and defendant were partners in the purchase and sale of certain personal property described in the petition; that defendant had disposed of all of said property, and as part consideration for same had secured title in himself to a tract of 160 acres of land described in the petition. The prayer of the petition is for an accounting and for judgment for one-half of the profits realized by defendant from the sale of said personal property, including said tract of land.

The defendant answered denying under oath the existence of said alleged partnership, and averring that he never made any agreement or contract of any kind with the plaintiff at any time, and had never had any conversation or business relations of any kind with him. He further averred that it was true that the deed records of Harris County

showed that he had title to the tract of land described in plaintiff's petition, but that he does not own the same, and holds the title thereto for the benefit of his father, G. D. Johnson, who is in fact and in truth the owner of said property; that the said G. D. Johnson was not the partner of plaintiff in the purchase and sale of said personal property; that he is informed and believes that the said G. D. Johnson purchased said personal property from the plaintiff, and that plaintiff had no interest in the proceeds of the sale of said property; that he has never been called upon for an accounting and can not answer as to the proceeds of the sale of said property by G. D. Johnson, because he has no information as to same. This answer is sworn to by G. D. Johnson as the agent of G. A. Johnson.

It does not affirmatively appear from the record that G. D. Johnson was ever made or became a party to the suit, but this is evidently an omission in preparing the transcript, because the judgment of the court below is against G. A. and G. D. Johnson, and G. D. Johnson alone appeals, and does not assign as error the absence of pleading authorizing a judgment against him.

The cause was tried by the court below without the intervention of a jury, and judgment rendered in favor of plaintiff against G. A. and G. D. Johnson for one-half of the land described in the petition, and against G. D. Johnson for the sum of $200. As before stated G. D. Johnson alone prosecutes this appeal.

The evidence introduced by plaintiff is to the effect that appellant through his agents, McKinney & Co., a firm composed of J. B. McKinney, E. H. Grinstead, and J. A. McCarty entered into a contract with plaintiff whereby he agreed to furnish the money to purchase the personal property described in the petition which had been bid in by plaintiff at a judicial sale, with the understanding that the property should be conveyed to the appellant, and that he would resell the same and divide with plaintiff whatever profits he might make out of the transaction; and that in pursuance of this agreement the appellant advanced $2000, the amount of plaintiff's bid for said property, and the officer making said sale at plaintiff's request conveyed the property to appellant. The appellant resold the property, and as consideration for a portion of same received the land described in the petition, the title to which was taken in the name of his son, the defendant G. A. Johnson. There is also evidence to the effect that appellant had received from the sale of said personal property the sum of $2600 in addition to the land.

The appellant testified that J. A. McCarty, who was his agent and bookkeeper, purchased the personal property for him from McKinney & Co., who were the agents of the plaintiff; that the property had been resold by the said McCarty and McKinney & Co. as agents for himself and plaintiff, and he had received back his $2000 and the land, but that in order to secure title to himself in the land had paid to McKinney

& Co. the sum of $280, which he understood represented the plaintiff's interest in the land; that he did not know what the personal property sold for, nor what expenses had been incurred in handling same; that McCarty was his bookkeeper and knew the details of the transaction.

E. H. Grinstead, of the firm of McKinney & Co., testified that his firm acted as the agent of plaintiff in the transaction, and that appellant paid them $280 at the time the land in question was conveyed to his son; that this amount covered the interest of his firm and the plaintiff in the profits of the transaction, and if plaintiff had any claim for any portion of same such claim was against the firm of McKinney & Co. and not against appellant.

The first assignment of error complained of the action of the trial court in refusing to allow the witness J. A. McCarty to testify in the trial of the case. The issues raised by this assignment are fully presented in the following bill of exception taken by appellant to the ruling of the court complained of in the assignment:

"Be it remembered that on the trial of the above numbered and entitled cause, that at the beginning of the trial the plaintiff invoked the rule as to separation of witnesses; that at the time said rule was invoked one of the defendant's witnesses, J. A. McCarty, was not in the courtroom, but confined at his home in Houston by rheumatism. That this fact was stated to the court by defendant's counsel, and was given as a reason why the said witness could not be brought in and sworn and charged by the court as to the effect of the ruling; that said cause was commenced in the morning, and that before the noon recess plaintiff had testified in the case, and plaintiff had put the defendant G. D. Johnson on the stand and had examined him. After the noon recess, plaintiff having closed, the defendant put on the stand said witness J. A. McCarty. Before said McCarty had testified to any fact in the case plaintiff's counsel examined him, and said McCarty testified, in answer to questions propounded by plaintiff's counsel, that he had been brought to the courthouse in the buggy of G. D. Johnson, and had come with said Johnson. That on the way to the courthouse, said Johnson stated to him that D. D. Cooley had testified that he (McCarty), together with James McKinney and S. F. Grinstead, were the agents and had acted as the agents in the transactions out of which the above suit grew of said G. D. Johnson. Said witness further testified that said G. D. Johnson told him that he (Johnson) had been on the stand, but did not state what Johnson had testified to."

Plaintiff's counsel then objected to the said witness testifying in the cause at all, because he had violated the rule, and had been talked to by defendant G. D. Johnson as to the testimony of the witness D. D. Cooley. Before the court ruled on the question, counsel for defendant asked J. A. McCarty if he knew of the rule and knew what it meant. Said McCarty testified that he did not know of the rule having been invoked; that he did not know what it meant, and did not know that he had violated any rule of court.

G. D. Johnson was then placed upon the stand and testified that he had told said McCarty that Cooley had testified as to the agency of said McCarty, McKinney, and Grinstead as aforesaid, and told said witness nothing else about the testimony, merely stating to him that he (Johnson) had testified. Said Johnson further testified that he did not know what was meant by invoking the rule, and did not know that he was violating any rule in saying what he did to said McCarty, and had no intention of doing anything that he ought not to have done, and did not know he was doing anything he ought not to have done. He further testified in answer to plaintiff's counsel that he heard the court tell the witness Grinstead to remain out of the court and not talk to anyone about his testimony.

After having heard the testimony of said McCarty and said Johnson the court held that McCarty could not testify, and refused to allow him to testify to any fact whatever in this cause. Defendant's counsel then stated to the court what he expected to prove by McCarty as follows:

"That he expected to prove, and that McCarty would testify, that he, McCarty, was agent of G. D. Johnson in the transaction growing out of the purchase and sale of certain machinery belonging to the Compo Board Manufacturing Company. That James McKinney and E. F. Grinstead came to the witness and stated that they represented D. D. Cooley, and wanted witness to get a purchaser for certain property that had been sold by Chas. E. Ashe, special commissioner, to W. G. Love for D. D. Cooley. That said witness would testify that he procured G. D. Johnson to purchase said property at and for the sum of $2000; that the agreement between Johnson, witness, McKinney, and Grinstead was that Johnson should put up $2000; that McCarty, Grinstead, and McKinney should sell the property, McKinney and Grinstead acting for Cooley and McCarty for Johnson. That after the sale of said property was made, that G. D. Johnson should be paid $2000 advanced by him. That the profits, if any, of the sale should be divided one-half to said G. D. Johnson and the other one-half to McCarty, McKinney, and Grinstead. Said witness McCarty would testify that he knew that McKinney and Grinstead were going to give a portion of their profits, if any, to D. D. Cooley. McCarty would have testified that he did not have anything to do with the contract between Grinstead and McKinney on the one side and Cooley on the other, and that said contract was a personal one between McKinney and Grinstead, composed of the firm of McKinney & Co., with which contract he (McCarty) had nothing to do, and that G. D. Johnson had nothing to do with said contract. He would have testified that he was not a member of the firm of McKinney & Co.; that McKinney & Co. did not represent nor did either of the firm represent G. D. Johnson, and that they had nothing whatever to do with G. D. Johnson.

"Said McCarty would also have testified that said property had been sold, and that after the sales were made expenses were paid, and that

after $2000 had been paid to G. D. Johnson, being the sum advanced by him, there were some compo boards left. That said boards were sold for a piece of land, and that G. D. Johnson paid witness and McKinney & Co. $280, being all witness and McKinney & Co. got for their services; that McKinney & Co. got their portion of this $280, and witness did not know whether they had paid their contract with D. D. Cooley or not. Witness would have testified that he never knew that Cooley claimed any interest from G. D. Johnson, and never knew that Cooley claimed that G. D. Johnson was a partner with Cooley. That Cooley never made such claim to witness; that witness always acted for Johnson in this matter; that Johnson was absent from Houston most of the time, and that the contract by which Johnson purchased the property was made by witness as the agent of Johnson with McKinney and Grinstead as the agents of Cooley. That in said contract there was nothing said and no agreement made that Cooley should have any interest with Johnson. That Cooley's interest was a matter between him and McKinney & Co., with which neither witness nor Johnson had anything to do.

"Witness would have testified that he kept the books and could show an itemized statement of the expenses incurred in the sale of said property, and show exactly what had been received from said sale, and that Mr. Johnson did not know what had been received, nor what had been expended, and that the whole matter was left with witness, who kept an account thereof in a book that witness' son had lost or mislaid and he could not now produce it. That he knew the result, and that it required $280 to be paid by Johnson before Johnson could get title to the land described in plaintiff's petition.

"After stating what said witness would testify, the court reiterated his ruling and refused to allow said witness to testify to any of said facts or testify in the case at all. To which ruling G. D. and G. A. Johnson in open court excepted, and here now tender this their bill of exception and pray the court to allow same, and it is ordered that this bill of exception number 1 be filed as part of the record in this cause."

By the court: "This bill is subject to this qualification. This witness was not in the slightest degree exempted from the rule by the court, either expressly or impliedly, as seems to be implied in the bill offered. The court stated as to witnesses not present that they could be put under the rule when they arrived. The violation of the rule for which the court refused to hear this witness' evidence was by G. D. Johnson, the real defendant in the case, against whom judgment was rendered, who was present when the rule was invoked, who heard the court instruct the witnesses. Johnson talked to McCarty while bringing him to court on the most material point in the case, viz., recited to him what Cooley's evidence was. Johnson testified as stated in the bill as to his not knowing he was violating any rule, etc., but on cross-examination by plaintiff's attorney answered "that he was present in the court when the rule was invoked; that he heard the court instruct

the witnesses not to discuss the testimony in the case; and that he knew the purpose of the rule was to prevent the witnesses hearing the evidence." The trial court considered that if, when the rule was invoked, a party to the suit could nevertheless inform the witnesses as to the most vital evidence in the case, the rule would be of no value. So qualified, this bill is allowed. Wm. H. Wilson, Judge."

There is a conflict in the authorities on the question of the right of a trial court to refuse to permit a witness to testify, who, after having been placed under the rule, has violated the instructions of the court and heard the testimony or a repetition of the testimony of other witnesses in the case. The weight of authority in America holds that such right does not exist in the court unless the violation of the rule was occasioned by the party who offers the witness. In England the right is denied in all cases except those affecting the revenue. Jones on Ev., sec. 808.

The question in so far as it has been passed upon by the higher courts of this State has more often arisen in criminal cases, and the complaint has generally been that the trial court erred in permitting the witness to testify. Sherwood v. State, 41 Texas, 498; Powell v. State, 13 Texas Crim. App., 244; 14 Texas Crim. App., 16; 18 Texas Crim. App., 536; 30 Texas Crim. App., 612; 2 App. C. C., secs. 321, 452. In these cases it was held that the matter was one resting in the discretion of the court, and the ruling of the trial court would not be revised unless there was a clear abuse of such discretion resulting in injury to the party complaining.

We are of opinion that the administration of justice would be better subserved by denying to the trial court the right in any case to refuse to allow the witness to testify. The primary object of judicial investigation is the ascertainment of the truth of the matter under consideration, and a rule which excludes any means by which the truth may be arrived at, should not be adopted by the courts. The rule which requires the court on the motion of either party to exclude the witnesses from the courtroom so that they may not hear each other testify, and to direct them not to discuss with each other or permit any person to discuss with them the evidence in the case, is designed to aid in the ascertainment of the truth, and when invoked by either party to a suit should be enforced by the exercise of the power of the court to punish as contempt any violation of such rule, but to authorize the court to exclude the testimony of a witness who had violated the rule would in many cases operate to defeat the object and purpose of the rule. The Supreme Court of the United States in the case of Holder v. United States, 150 United States, 91, holds that the court has no right to exclude the testimony of a witness because of a violation of the order of withdrawal. We think this is the sound doctrine and should be followed by our courts.

The case we are considering does not, however, require the application of this doctrine. Under the rule laid down by the courts of this

State we think the trial court abused his discretion in refusing to allow the witness to testify. The information given the witness by the appellant as to the testimony of plaintiff could only have affected the testimony of the witness upon one of the points in issue between the parties, and the testimony of this witness was vitally material to the appellant upon all of the issues in the case. He alone knew the exact details of the transaction under investigation, and could give the amounts for which the property sold and the items of expense in handling the property and making the sales. There being no other source from which this evidence could be supplied, his testimony should not have been excluded on this point, at least. The evidence in the case as to the amounts for which the property sold and the expenses of making such sale is of the most indefinite and uncertain character, and the exclusion of this testimony was manifestly injurious to appellant.

We are of opinion the refusal of the trial court to allow the witness to testify requires a reversal of the judgment, which is accordingly ordered, and the cause remanded for a new trial.

*Reversed and remanded.*