Robert Richard JOHNSON, Appellant,

v.

SOUTHWESTERN BELL TELEPHONE, INC., et al., Appellees.

No. 6682.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 17, 1964.

Rehearing Denied Oct. 7, 1964.

Fulmer, Fairchild & Badders, Nacogdoches, for appellant.

James E. Barden, Houston, Larry Barnes, Dallas, Wardlow W. Lane, Center, for appellees.

HIGHTOWER, Chief Justice.

Plaintiff, Robert Johnson, brought suit jointly against defendants, Southwestern Bell Telephone, Inc. and James Cozort, for damages for personal injuries received when plaintiff was struck by a truck belonging to said company and which was being driven by Cozort in the course of his employment for said company.

Trial was to a jury, which found that Cozort did not fail to keep a proper lookout; that Cozort's failure to warn Johnson and his failure to drive to one side of Johnson was not negligence; that Johnson sustained injuries as a result of being struck by the truck; that Cozort did not know that Johnson was in front of the truck; that Johnson's damages were $7,590.00. The jury failed to find Johnson guilty of any negligent acts or omissions, but did find the accident to be unavoidable. Hence, plaintiff's appeal.

Plaintiff first complains of the refusal of the trial court to permit the witness Blakey to testify to impeach the witness Watson, who had testified for defendant. Counsel for plaintiff asked that the rule be invoked, and the trial court admonished the witnesses as to the rule. The witness Blakey had been employed by plaintiff as an investigator, and was not placed under the rule. Blakey was present during the introduction of some of the testimony, but testified upon a bill of exception that he was not present at the time Watson testified. Under examination by counsel for plaintiff, he testified relative to the day of Watson's testimony:

"Q. Did you, at my request, stay out of the hearing of the courtroom today?

"A. That is correct.

"Q. During any time that you were in the courtroom, yesterday or day before yesterday, did you hear or see Cecil Watson even in the courtroom?

"A. No, sir.

"Q. Or did you hear him testify?

"A. No, sir."

The trial court, on the bill of exceptions, stated:

"Mr. Blakey has been in the courtroom at various times today for that matter but the Court is in no position to say that he was here while any testimony was being offered. Court is in no position to say whether he was or was not. He has been in the courtroom at some time or times today. * * * I say I'm not in a position to say about that. I have no recollection of it at all. I recall having seen him in the courtroom but it could have been this morning before Court resumed for that matter. I have no independent recollection."

A résumé of the physical facts is material:

Defendant's aerial telephone cable had been burned the night before at the scene of a filling station fire. Plaintiff, Robert Chumley, and Barney Milford, employees of the City, were at the scene in connection with damage to light and water facilities owned by the City. Shortly after Cozort arrived at the scene in his pickup truck in connection with the damage occasioned by the fire to defendant's telephone cable, Chumley instructed plaintiff to take a meter out. The top of the meter box was level with the ground, and the meter below the ground. He had difficulty removing it, and while working to do so, was down on his knees with his shoulders lower than his hips and his hands down inside the meter box. The meter was in front of defendant's parked truck, and as plaintiff was working on the meter his shoulders were over the meter and his hips were some three feet or more farther from the front of the truck than his head. While plaintiff was working on the meter in this position, Coz-

ort got into the truck, started it, and drove it forward, striking and injuring plaintiff.

Plaintiff testified that when Cozort arrived at the scene and parked his truck, he, plaintiff, was standing about 14 feet from the meter box. When he arrived, Cozort put on his tools and climbed a telephone pole in front of the defendant's truck. The meter box was five or six feet in front of the truck and the telephone pole was five or six feet from the meter box. Cozort walked by the meter box to get to the pole. When Chumley told plaintiff to get his tools and take out the meter, Cozort was up the pole. *Cozort had to pass right by plaintiff to get back to his truck, and plaintiff is positive Cozort walked by the meter where he was working when he came from the pole to his pickup. There was nothing to keep Cozort from seeing plaintiff.*[1]

Witness Chumley couldn't recall whether Cozort had arrived when Chumley told plaintiff to take the meter out, but Cozort's truck was there when plaintiff started work on the meter. According to his best recollection, Cozort did go over and climb the telephone pole, *but he wouldn't say he did; he just doesn't remember.* He testified that to go to and come from the telephone pole, *Cozort would have had to pass within three or four feet from where plaintiff was working on the meter.*

Defendant Cozort testified that when he arrived at the scene he stopped his truck and talked to Chumley, who was toward the back of the truck, for about four or five minutes. He then returned directly to his truck and drove forward. As he drove forward, he felt the truck bump plaintiff, got out, went around in front and asked if plaintiff was hurt. *At no time that day did he climb the telephone pole at the scene.* If he had gone to the pole from the pickup, or if he had climbed the pole and returned to the pickup, *he would have walked within several feet of plain-tiff as he was working on the meter and could have seen him.*

*Cecil Watson, for defendants, testified that the truck did not hit plaintiff;* "Mr. Jimmy" pulled out to the left. Watson was standing within five feet from where plaintiff worked. Cozort was on the ground when he saw him; *he never did see Cozort up the telephone pole.* He further testified that he had talked to no one about the facts of the case, but that Ray Blakey came to his house last week and told him he was representing plaintiff and understood he knew something about the occurrence, but he didn't discuss the case with him—just talked.

Plaintiff's bill of exception reflects that if Blakey had been allowed to testify as a witness for plaintiff, he would have stated that he had interviewed Watson at Watson's home several days prior to trial and questioned him orally about the case; that he had with him a recording machine which recorded clearly and accurately the conversation between Watson and himself; that such recording had been accurately transcribed upon a typewriter; that the instrument he identified was a direct transcript, word for word, between Watson and himself; that he had with him the recording itself, which could be played and heard by everyone in the courtroom.

Watson, on recall, again testified that he had talked with no one about the case and upon hearing the recording played, testified that he did not recognize his voice thereon, and that he did not make the statements in the recording.

Blakey, thereafter recalled to testify on the bill of exception, testified that Watson was the man he had interviewed and whose conversation he had recorded.

From Blakey's testimony and the transcribed recording, it appeared that Watson discussed the occurrence of December 1, 1960, and stated, among other things, that

---

(1. Italics ours throughout.)

Cozort was up the telephone pole when Watson arrived at the scene; *that he saw Cozort get down off the pole, pull off his spurs right in front of his pickup, get in the pickup and start off; that plaintiff was working on the meter all the time Cozort was up the pole; that there was nothing to keep Cozort from seeing plaintiff.*

We are of the opinion that the trial court erred in refusing to allow Blakey's testimony. Although Blakey was present during the introduction of some of the testimony, *his testimony stands uncontradicted in the record that he was not present at the time Watson testified.* Moreover, if Blakey was in the courtroom at such time, it does not appear from the record that his presence was with the consent, connivance, procurement or knowledge of appellant or his counsel.

> "We are of the opinion that the administration of justice would be better subserved by denying to the trial court the right in any case to refuse to allow the witness to testify. The primary object of judicial investigation is the ascertainment of the truth of the matter under consideration, and a rule which excludes any means by which the truth may be arrived at should not be adopted by the courts." Johnson v. Cooley, 30 Tex.Civ.App. 576, 71 S.W. 37, n. r. e.

It was with commendable candor and fairness that the trial court, on the bill of exception, made the statement that he was not in a position to say whether Blakey was present at the time Watson testified.

■ The relative position of defendant's truck and telephone pole and plaintiff's place of work compels the conclusion that had Cozort returned from the telephone pole to his truck, as testified to by plaintiff, he would undoubtedly have seen plaintiff's perilous position in front of his truck. This was a hotly contested fact for the jury's determination. Even though Cozort

had testified that he was aware that his truck had struck plaintiff when he started forward, Watson had denied such fact. Such denial itself could have been expected to weaken the credibility of Watson's testimony before the jury, and we believe that the additional contradiction of Watson's testimony by Blakey would have utterly destroyed said witness' credibility before the jury and greatly weakened Cozort's. The weak, vacillating conclusion of Chumley's to the effect that he believed, but wasn't sure, that Cozort climbed the pole, could not be expected to have carried much weight with the jury. Thus, the determination of the credibility of plaintiff versus Cozort and Watson was squarely before the jury. In such circumstance, it is believed that no trial lawyer or judge would gainsay the probable devastating effect on defendant's case of Blakey's proffered testimony. The jury should have been permitted to hear Blakey's testimony, and should not have been denied their prerogative to determine if the voice on the recording machine was indeed Watson's. Sawyer v. Willis, Tex.Civ.App., 310 S.W. 2d 398. And see I, Texas Law of Evidence, p. 531, Sec. 687.

In all the cases called to our attention where a witness who had violated the rule by being in the courtroom after having been personally placed under the rule, it has been held not to have been an abuse of the court's discretion to allow such witness' material testimony. Holstein v. Grier, Tex.Civ.App., 262 S.W.2d 954, n. r. e., and cases cited therein. Conversely, if, in this case, the trial court had any discretion, which we cannot concede, then it must be held that such discretion was abused by the refusal of the testimony of Blakey who had not even been placed under the rule.

We believe that when a party is denied the benefit of admissible and material testimony of a witness, that such denial so directly and adversely affects the interest of the public generally, as that interest is de-

clared by the laws of our State, that the error is practically fundamental. Be that as it may, however, we are of the opinion that the error of the trial court in refusing to allow Blakey's testimony amounted to such a denial of the rights of plaintiff as was reasonably calculated to and probably did cause the rendition of an improper judgment, and that in the interests of justice and fairness the case should be reversed and remanded for new trial.

■ Other contentions of plaintiff deal with the action of the trial court in submitting three of defendant's defensive issues containing the word "accident". Thus, Issue No. 12 was, "Do you find from a preponderance of the evidence that the *accident* in question, if any, was the result of an unavoidable accident?" Three corollary proximate cause issues were of the same vein; e. g., "Was plaintiff's failure to keep a proper lookout for his own safety a proximate cause of the *accident* in question?" None of these corollary issues were reached by the jury because of their negative answers to the primary defensive issues. Plaintiff contends that the use of the word "accident" in these issues constituted a comment by the court on the weight of the evidence by assuming the occurrence in question was an accident.

As a general position, the use of such phrase would constitute reversible error. However, plaintiff's affirmative issues, hereinbefore alluded to in the second paragraph of this opinion, were answered unfavorably to plaintiff by the jury. All of these issues were properly submitted, as they were phrased with the use of the word "occasion" instead of "accident". In other words, plaintiff had already lost his case by such unfavorable findings before the jury had ever reached the defensive issues. We do not accede to the proposition that the complained of issues had any bearing on the answers of the jury to plaintiff's affirmative issues. Plaintiff's contentions are overruled with the observa-

tion that it would be better practice for the trial court to use the word "occurrence" instead of "accident".

■ Plaintiff also attacks the negative findings of the jury as to the negligence of the defendant as being contrary to the weight and preponderance of the evidence. These are questions of fact to be determined by considering the entire record, which we have done. We do not find such answers of the jury to be clearly wrong and manifestly unjust in the present state of the record.

Other contentions of the parties are not likely to arise upon another trial of the case.

Reversed and remanded.

STEPHENSON, Justice (dissenting).

I respectfully dissent. The witnesses had been placed under the rule in this case at the request of the plaintiff's attorney. Plaintiff's attorney had the private investigator, Blakey, present during the course of the trial, to assist in such trial. Plaintiff's attorney knew he had a tape recording of a conversation, which was nothing more than an ex parte statement, and which would not have been admissible under any circumstances except for impeachment purposes. In spite of this knowledge, plaintiff's attorney did not have Blakey placed under the rule with the other witnesses. Even though Blakey may not have been present at the time Watson testified, undoubtedly Blakey was present and heard the plaintiff testify that Cozort did climb the pole, and also heard the witness Chumley testify as to such matter. Blakey had the benefit of hearing the testimony that would be bolstered if the witness Watson could be impeached.

The majority opinion does not make it clear to me, and I do not think it will make it clear to trial judges, whether it is holding that a trial judge has no discretion un-

der the circumstances of this case, or that the trial judge abused his discretion in this case. If the majority opinion holds that a trial judge has no discretion under these circumstances, then this is the first case that I have found so holding. Plaintiff cites the cases Holstein v. Grier, Tex.Civ. App., 262 S.W.2d 954, and Johnson v. Cooley, 30 Tex.Civ.App. 576, 71 S.W. 34, in support of his position in this case. It must be noted that neither of these cases goes as far as saying the trial court has no discretion, but each holds the trial court abused its discretion. It is also pointed out that in both the Holstein Case, supra, and the Johnson Case, supra, the witness whose testimony was excluded had been placed under the rule, and the point is made that the trial court could enforce the rule by contempt proceedings. No such enforcement would have been available in the present case, as the witness had not been placed under the rule. To hold that the trial court has no discretion under these circumstances would, in effect, make Rule 267, Texas Rules of Civil Procedure, meaningless. A litigant could refrain from placing a witness under the rule, let the witness hear the remainder of the testimony and then place the witness on the stand. The witness would not be in contempt of court, and the trial court would be powerless to decide whether the witness should be permitted to testify. Trial courts must be in a position to control the trial of cases in order that justice and equity be done.

On the other hand, if the majority opinion is holding that the trial court abused its discretion, there are other problems to be faced.

A prior inconsistent statement cannot be used as substantive evidence of the truth of the facts stated. The testimony of the witness Blakey and the tape recording of the conversation would not be evidence of any facts stated, and would have no probative value to support any issue in the case. No case has been cited to us, and I have found no cases, in which it has been held that a trial court abused its discretion in excluding impeachment testimony where the rule had been invoked, and the witness either had been placed under the rule or had not been placed under the rule.

In addition to this, the plaintiff is faced with Rule 434, T.R.C.P. This plaintiff, in order to be entitled to a reversal, must show that but for the exclusion of such testimony the jury would in all reasonable probability have returned a verdict other than the verdict it did return. Maddox v. Gulf, Colorado & Santa Fe Railway Co., Tex.Civ.App., 293 S.W.2d 499. I also quote from Missouri-Kansas-Texas Railroad Company v. Wright, 311 S.W.2d 440, as follows:

"Assuming that it would have been proper to have permitted the introduction of the complaint in the Schubert case, rather than denied, the matter of whether such exclusion amounted to reversible error would be controlled by the provisions of T.R.C.P. 434. The Railroad is therefore burdened with the obligation to show that the trial court's exclusion of the proffered evidence was reasonably calculated to cause and probably did cause the jury to return a verdict contrary to that which would have been returned had the evidence been admitted. This burden has in our view not been discharged."

A recent decision of this court, passing upon Rule 434, is in part as follows:

Barmore v. Safety Casualty Company, 363 S.W.2d 355, (McNeill, J.):

"Defendant lastly urges that the trial court's exclusion of Mrs. Barmore's testimony was harmless within the purview of Rule 434, Texas Rules of Civil Procedure. In this connection it is stated that plaintiff's testimony to the effect that he told Hoke of

the accident, which was not denied, served as contradiction and answer to the testimony produced by defendant. We must measure the error by the test: Did it amount to such a denial of appellant's rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment? Much consideration has been given this question. Who can say what effect the tendered testimony may have had upon the jury? Would the jury have attached more weight to what plaintiff had testified if his wife had been allowed to tell that he told her he had been hurt. Her testimony would not have been that he got hurt—which was the question directly in contest; it would have been proof of a secondary nature—that he told her he got hurt. Thus her testimony rested directly upon her husband's. The primary fact of injury must rest squarely upon plaintiff's own testimony as there were no other witnesses present. Thus his veracity alone in the final test was at issue. His wife's testimony, if allowed, may have been sufficient to cause the jury to have decided that he had gotten hurt. But we cannot say that it *probably* did cause the rendition of an improper judgment."

In this case I would hold first that the control of witnesses under the circumstances of this case, [that is, the rule has been invoked, a witness not placed under the rule hears all or a part of the testimony and is then called to testify,] lies within the sound discretion of the trial court. I would further hold that the trial court did not err in refusing to permit the witness Blakey to testify, as such refusal was not an abuse of its discretion.

I also would hold, even though the majority opinion holds such refusal to be error, that it is not harmful error under Rule 434, T.R.C.P.