**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**F. H. WALDON, Appellee.**

**No. 91.**

Court of Civil Appeals of Texas.

Tyler.

June 3, 1965.

Rehearing Denied July 8, 1965.

Jack W. Flock, Ramey, Brelsford, Hull & Flock, Tyler, Ramey, Ramey & Neal, Sulphur Springs, for appellant.

Howard S. Smith, Sulphur Springs, Woodrow H. Edwards, Mount Vernon, for appellee.

DUNAGAN, Chief Justice.

This is a workman's compensation suit brought in the District Court of Hopkins County, Texas, by appellee, F. H. Waldon, against appellant, Texas Employers' Insurance Association, to recover workman compensation benefits for accidental injury while working for the subscriber-insured, M. J. Delaney Company.

A trial by jury resulted in a verdict upon which the court rendered judgment for appellee for total-permanent benefits. Appellant's amended motion for a new trial was overruled and this appeal therefrom has been timely perfected.

By its Point No. 1 appellant complains that "The court erred in refusing to set aside the verdict of the jury since it appeared that the jury was guilty of misconduct which amounted to material error in that during its deliberations, the jurors discussed, considered and were influenced by the consideration of the legal effect of their answers to the Special Issues submitted rather than a consideration of the competent evidence before them."

The appellant further complains by its Point of Error No. 2 that "The court erred in refusing to set aside the verdict of the jury since it appeared that the jury was guilty of misconduct which amounted to material error in that during its de-

liberations, a juror injected new and additional evidence relating his personal knowledge of the manner in which drillers' reports were kept."

Points of Error Nos. 1 and 2, being complaints for alleged jury misconduct, will be discussed together.

In its amended motion for a new trial, appellant alleged that the jury was guilty of misconduct while considering its verdict, and the affidavits of two jurors were attached to said motion. The trial court heard evidence on the motion and overruled it. No findings of fact or conclusions of law on the issue of misconduct were filed by the trial court, and none were requested.

■ Where no expressed findings are filed, it is presumed on appeal that the trial court found all controverted facts in support of its judgment and that no misconduct occurred. Brawley v. Bowen, 387 S.W.2d 383 (S.Ct.) 1965, and cases cited therein on this point; Bass v. Aransas County Independent School District, 389 S.W.2d 165 (Tex.Civ.App.) 1965, as of this time, no writ history.

Special Issue No. 1 inquired whether Waldon sustained an injury to his body on or about August 26, 1962, and Special Issue No. 6 inquired as to whether his total incapacity to labor, if any, was permanent or temporary, to each of which the jury answered "Yes" and "Permanent", respectively.

Upon the hearing of the amended motion for a new trial, the only jurors testifying were Mrs. Jackie McGlamery, Mrs. T. J. Wright and H. E. Mays. Mrs. McGlamery and Mrs. Wright were called by the appellant and testified in substance that, while the jury was deliberating its verdict and before any issue had been answered, there was some discussion among the jurors as to how Issues Nos. 1 and 6 should be answered for the plaintiff to get his money. Mrs. McGlamery's testimony, in part, on this point was as follows:

"Q. Mrs. McGlamery, before Special Issue No. 1 was ever answered by the jury, was there any discussion by the jurors with reference to how the issue ought to be answered in order for Mr. Waldon to get any money from the insurance company?

"A. Well, there was some discussion.

"* * *

"Q. Mrs. McGlamery, please state whether or not before Special Issue No. 1 was answered 'Yes', there was any discussion or statements made by any of the jurors in your presence that the question had to be answered 'Yes' or Waldon wouldn't get his money from the insurance company?

"A. There was some discussion.

"Q. Well, weren't there statements made to that effect, Mrs. McGlamery?

"A. Yes.

"Q. Now, do you know who made the statements?

"A. No sir.

"Q. Was it made more than once?

"A. I don't recall.

"* * *

"Q. * * * Mrs. McGlamery, do you recall whether or not before Special Issue No. 6 was answered by the jury, was it discussed among the jurors as to how it ought to be answered in order for Waldon to get his money?

"A. It was discussed that he had a permanent injury.

"Q. Was it discussed, Mrs. McGlamery, that the question had to be answered 'Permanent' or Mr. Waldon would not get his money?

"A. It had to be answered 'Permanent' by the jurors.

"Q. All right. Was there any discussion among the jurors, Mrs. Mc-

Glamery, in your presence as to what would happen if it was answered 'Temporary'?

"A. If it was answered 'Temporary', then he wouldn't get anything.

"* * *

"Q. Was it discussed by more than one juror?

"A. It was discussed by all of them.

"Q. Mrs. McGlamery, do you recall how the jurors stood numerically before those statements were made?

"A. No.

"Q. Was there a division among the jurors before the statement was made?

"A. No.

"Q. Was there a division among the jurors on Special Issue No. 1 before any of the discussion was made?

"A. There was some.

"Q. Do you recall what division that was?

"A. No sir.

"* * *

"Q. After this discussion was held about the issue had to be answered 'Permanent', did all the jurors then vote to answer 'Permanent'?

"A. Did they all vote 'Permanent'?

"Q. Yes.

"A. Yes sir."

Mrs. McGlamery further testified that she could not recall the name or names of the jurors who stated that Issue No. 6 had to be answered "permanent" or Waldon would not get his money.

On cross examination, Mrs. McGlamery testified that her answers to the issues were based upon the evidence and that alone, and that she did not consider any other matter whatsoever outside the evidence.

The testimony of the witness, Mrs. T. J. Wright, on this point was substantially the same as Mrs. McGlamery. Juror Mays testified he did not hear such statement or discussion. Mrs. Wright did testify that her answers to Issues 1 and 6 were based upon the discussion in the jury room "that that was the way it must be answered in order to get Mr. Waldon some money." However, on cross examination Mrs. Wright testified that the answer she made to every question was based upon the evidence and that alone. This evidence of Mrs. Wright is in conflict with her testimony on direct examination. Under these circumstances, the construction to be placed on this witness's testimony and the inference to be drawn therefrom was for the trial court. Since the court overruled the motion, we must imply a finding most favorable to the appellee. Booth v. H. P. Drought & Co., 89 S.W.2d 432 (Tex.Civ.App.) 1936, writ dismissed; Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62, 1945; Monkey Grip Rubber Co. v. Walton, 122 Tex. 185, 53 S.W.2d 770, 1932.

Conceding, but without deciding, that there was jury misconduct, under Rule 327, Texas Rules of Civil Procedure there remains the question of whether it was "material" or if "injury probably resulted to the complaining party." In determining the question, the evidence, both on the hearing on the motion for new trial and the evidence taken during the trial, must be considered. Motley v. Mielsch, 145 Tex. 557, 200 S.W.2d 622, 1947; Prudential Fire Ins. Co. v. United Gas Corporation, 145 Tex. 257, 199 S.W.2d 767, 1946.

In the case of Maryland Casualty Co. v. Hearks, supra, the Supreme Court in discussing the question of jury misconduct said:

"It is further alleged that the jurors were guilty of misconduct in that they first determined that the employee should recover and then designedly un-

dertook to answer the issues so as to accomplish that result.

"Only two jurors testified on this issue. One of them testified that after the jury retired it was discussed that if the issues were not answered in a given way the employee would not recover. However, this juror did not testify that any effort was made to answer the issues so as to accomplish such a result. On the contrary, he testified that each issue was answered according to the evidence and without regard as to who would recover. The other juror testified on direct examination that the issues were answered as they were in order to effectuate the purpose of enabling the employee to recover, but on cross-examination this was denied, and the juror further testified that each issue was answered according to the evidence and without regard to the results. * * *

"The inconsistency between the evidence given by the juror on direct examination and that given by him on cross-examination was resolved by the trial judge in favor of the validity of the verdict. * * * We must assume, therefore, that while the jurors may have discussed in advance the fact that the issues would have to be answered in a given way in order to enable the employee to recover, no effort was made to carry such a purpose into effect. We must further assume that the jury answered each issue in accordance with the evidence and without regard to the results.

"The mere fact that the jurors discussed the fact that the issues would have to be answered in a given way if the employee was to recover is not alone sufficient to constitute misconduct of the jury. It must also appear that the jury designedly attempted to frame the answers to the issues so as to accomplish such a result. * * *"

See also Ford v. Carpenter, 147 Tex. 447, 216 S.W.2d 558, 1949; Monkey Grip Rubber Co. v. Walton, supra.

■ In the instant case even though some unidentified juror or jurors did discuss the fact that the issues would have to be answered in a given way in order to enable the plaintiff to recover, it is not shown that effort was made by the jury to carry such a purpose into effect. Nor was this statement and discussion shown to have caused any juror to change his vote on the issues. Davis v. Alwac International, Inc., 369 S.W.2d 797 (Tex.Civ.App.) 1963, writ refused, n. r. e. Further, the jurors who testified on the hearing said that they answered each issue in accordance with the evidence and that alone. Furthermore, it is not shown that the jury agreed in advance of answering the issues submitted, in whose favor the verdict should be and thereafter attempted to answer to questions submitted with the view of bringing about such result.

Under the above authorities, we do not believe that probable harm has been shown.

Next, the appellant alleges that jurors Mays and Miller, while the jury was deliberating its verdict, made the statements that they had experience with drillers' reports and that they weren't kept accurately and that such reports were of no significant value to determine whether or not a particular employee working on a particular shift worked on such shifts and on such dates. Juror McGlamery testified that such statements were made by jurors Mays and Miller. Juror Mrs. Wright testified that such statement was made by either Miller or Mays, she did not recall which one made the statement. Juror Mays testified that he did not make such statement and further that he had never had any experience with drillers' reports nor did he hear such statement by anyone else.

Appellee alleged that he was injured on or about August 26, 1962, while working on

a drilling rig, but that he continued to work up until August 29, 1962. He testified that he did not report to work on his regular tower on the night of August 29 because the injury he had received on August 26 required him to consult a doctor, who put him in the hospital on August 30. It was the position of the appellant that appellee took off from work on August 29, 1962, not because of an injury, but because of a desire to go to Dallas and that he had, in fact, made arrangements previously with a fellow-employee, George Hubbard, to "double over" for him. It was customary in the oil industry for a crew member to exchange towers with fellow crew members which is called a "double over."

Appellee testified that shortly after he was injured either at that time or the next night, he reported his injury to the driller, A. F. Meyers. Meyers testified that he did not report his injury to him on August 26 or at any time before leaving his job on August 29. Appellant produced a document consisting of many pages, known in the oil industry as a "driller's report," reflecting the daily towers, the names of the driller and crew members working thereon and many other records. The appellant's evidence shows that his report was kept by the drillers and that it accurately reflects the names of the employees working each hour, or shift. This report reflected that George Hubbard did "double over" for appellee on August 29, 1962, and further reflected that Waldon had "doubled over" for Hubbard a few days earlier. Furthermore, the report did not reflect that Waldon had reported an injury and Meyers, the driller, testified that if he had reported to him an injury that it would have been recorded in the report. The appellant says "This testimony controverted appellee's denial that he had at any time 'doubled over' a tower with Hubbard on this job. Appellant relies upon the driller's report to impeach the testimony of appellee, and in effect, to corroborate appellant's theory that appellee did not receive an accidental injury on the job, but left the job voluntarily and in accordance with his pre-arranged plan to make a trip to Dallas."

 The plaintiff Waldon testified that he and Hubbard very often swapped towers. That he did not remember whether Hubbard worked for him on his tower on August 29. Hubbard testified that he worked in Waldon's place one time and Waldon in his one time. He did not say on what date this exchange of work occurred. He said he asked Waldon to double for him. Meyers testified that when Waldon left the job on August 29, that he (Waldon) told him that he was going to Dallas to get drunk and that Hubbard was going to work in his place. Meyers further testified that he said to Waldon: "Well, now, don't get so drunk that you can't come back to work tomorrow night," and that Waldon said: "Don't worry, I'll be here." Waldon denied that he told Meyers or anyone else that he was going to Dallas when he left the job on August 29. It is obvious that juror Mays' testimony is in conflict with the testimony of jurors McGlamery and Wright. It has been held that if the evidence is conflicting on the question as to whether or not the misconduct actually occurred, the decision of the trial court either way on that question should be accepted as final. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462, 1943; Monkey Grip Rubber Co. v. Walton, supra; Brawley v. Bowen, supra. The trial court in the instant case impliedly found that such misconduct did not occur. Therefore, the trial judge's implied finding that the alleged jury misconduct of Mays did not occur is binding on this court. Brawley v. Bowen, supra.

 However, the evidence offered that juror Miller made such statement is undisputed in the record. The Supreme Court of this state has held that one of the conditions necessary to be shown in order to obtain a new trial upon jury misconduct is that the misconduct complained about is material. Kendall v. Southwestern Public Service Company, 336 S.W.2d 770 (Tex.

Civ.App.) 1960, n. w. h.; Crawford v. Detering Co., 150 Tex. 140, 237 S.W.2d 615, 1951. There was no issue submitted to the jury inquiring as to when notice of injury was given. The fact that the driller's report failed to show that Waldon had reported an injury on the job would not be any evidence of probative force that he did not receive an injury. Whether or not Hubbard "doubled over" for Waldon and at his (Waldon's) request on August 29 or whether Waldon told the driller that he was going to Dallas and would be back to work on the night of August 29 would not tend to prove that he did not receive an injury as alleged. The undisputed proof shows that he did consult a doctor on that date and was placed in a hospital. We do not find any issue that was submitted to the jury upon which this testimony would have any probative force. Thus it appears to us that Miller's statements in the jury room were not material. Moreover, probable harm has not been shown.

 When misconduct is established whether or not such misconduct be material and whether probable injury has resulted to the complaining party is one of law for the reviewing court. Barrington v. Duncan, supra; Estep v. Bratton, 24 S.W.2d 465 (Tex.Civ.App.) 1930, n. w. h.

 Not all jury misconduct constitutes reversible error. The burden rests upon the party complaining of jury misconduct as a ground for a new trial not only to show by a preponderance of the evidence that misconduct probably occurred, but also that it was material and that it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole, that injury probably resulted to the complaining party. Rule 327, T.R.C.P.; Noyl Corporation v. Houston Independent School District, 317 S.W.2d 756 (Tex.Civ.App.) 1958, no writ history; Barrington v. Duncan, supra; Crawford v. Detering Co., supra. We are of the opinion that in the case at bar appellant has failed to show any mis-

conduct on the part of the jury which was either material or probably resulted in injury to him. Singleton v. Carmichael, 305 S.W.2d 379 ((Tex.Civ.App.) 1957, writ refused, n. r. e. Neither, in our opinion, did the accumulation of these alleged acts of misconduct by the jury amount to misconduct warranting a reversal of the judgment. Walker v. Thompson, 287 S.W.2d 556 (Tex.Civ.App.) 1956, writ refused, n. r. e.; Noyl Corporation v. Houston Independent School District, supra. Appellant's Points 1 and 2 are, accordingly, overruled.

The appellant further alleges in its Point 3 that the court erred in refusing to grant a new trial upon the ground of newly discovered evidence. Appellant contends that a medical examination of appellee made by Dr. Milton Freiberg, three days before trial, was concealed from appellant by false testimony and not discovered by appellant until after the return of the jury verdict.

Upon the trial of this case the appellee, on direct examination, testified that subsequent to his injury he saw Dr. Merritt and Dr. McCarthy. Then his counsel propounded the following questions to him:

"Q. All right, sir. And have you seen another doctor?

"A. No sir.

"Q. Well, have you seen Dr. DeCharles?

"A. Yeah, DeCharles, that's right, yeah."

However, he did not reveal that only three days prior to the beginning of the trial that he had been to Dr. Milton Freiberg, an orthopedic surgeon, and that the doctor had furnished his counsel with a written report as to his findings. Neither appellant nor its representatives had any knowledge that appellee had been submitted to Dr. Milton Freiberg until after the judgment in the trial court had been entered.

After judgment was entered and before the hearing on its amended motion for a new trial, appellant's counsel took the deposition of Dr. Freiberg and offered it in evidence upon the hearing of its amended motion for a new trial and it is now before this court.

Upon the trial of this case, appellant called as one of its witnesses Dr. P. M. DeCharles, an orthopedic surgeon, and he testified fully as to his examination of the appellee and his findings as a result of the examination. Based upon his findings, he testified that on May 10, 1963, the day of the examination, that in his opinion the appellee was able to do manual labor. We have read the deposition of Dr. Freiberg and it appears to us that his testimony was substantially the same as that given by Dr. DeCharles. The appellant contends that his newly discovered evidence entitles it to a new trial and that this case should be reversed and remanded. It is appellee's contention that Dr. Freiberg's testimony is merely cumulative.

In order to justify the trial court in granting a new trial on the ground of newly discovered evidence, the appellant must show that such evidence was discovered too late to present at the trial, that it was not due to lack of diligence on appellant's part, that the testimony was material and not merely cumulative, and that the evidence was so material it would, if admitted, probably bring about a different verdict on another trial. Texas Employers' Ins. Ass'n. v. Pillow, 268 S.W. 2d 716 (Tex.Civ.App.) 1954, writ of error refused, n. r. e.; Allen v. Texas & N. O. R. Co., 70 S.W.2d 758 (Tex.Civ.App.) 1934, writ dism. In Houston & Texas Central Railway Company v. Forsyth, 49 Tex. 171, 180, the court discussed the problem of cumulative evidence as follows:

"* * * Cumulative evidence, as has been often said, is additional evidence of the same kind to the same point. Although evidence tends to prove the same proposition as that previously introduced, yet it is not cumulative when it is of a different character, and merely tends to prove the former proposition by proof of a new and distinct fact. 'The meaning of the rule,' says Judge Woodbury, in Aiken v. Bemis, 3 Wood. & Min., 358, 'cannot be to exclude, as cumulative, newly-discovered evidence of subordinate points or facts bearing on the general question; for, in such a view, no new trial for new evidence could ever be obtained, all new evidence relating, as it must if it be pertinent, to the general ground or general fact put in issue before. But it must mean that new evidence to a subordinate point or fact, is not competent where the subordinate point or particular fact was before gone into; because it is then cumulative or additional as to that fact.'"

It has been held that by new evidence is meant proof of some *new* and material fact in the case which has come to light since the trial. Mitchell v. Bass, 26 Tex. 372; New Amsterdam Casualty Company v. Jordan, 359 S.W.2d 864 (S.Ct.) 1962. The last two authorities above cited hold:

"* * * It is not proposed to multiply witnesses to any distinct fact or circumstance testified to by witnesses upon the trial; but it brings to light a new and independent truth, which the testimony upon the trial sought, but in vain, to prove.

"* * * The new evidence relates to the proof of a fact by means so dissimilar from that used upon the trial, as to afford no ground for treating it as cumulative merely of the evidence upon the trial. It is of so decisive a nature, so material to the just decision of the matter in controversy, * * *"

We deem the evidence of Dr. Freiberg to be cumulative. This testimony does not bring to light a new and independent truth, which the testimony upon

the trial sought, but in vain, to prove. Neither do we find that the testimony of Dr. Freiberg is of such decisive a nature and so material to a just decision to the matter in controversy. Moreover, a new trial will not be granted on account of newly discovered expert testimony. Allen v. Texas & N. O. R. Co., supra. It is undisputed that Dr. Freiberg would come within this category of giving expert testimony.

■■■■ Whether motion for a new trial on the ground of newly discovered evidence will be granted or refused is generally a matter addressed to the sound discretion of the trial court and the trial court's action will not be disturbed on appeal, absent an abuse of such discretion. Texas Employers' Ins. Ass'n. v. Pillow, supra; Mitchell v. Bass, supra; Williams v. Southern Life & Health Ins. Co., 208 S.W.2d 574 (Tex.Civ.App.) 1948, n. w. h. The inquiry is not whether, upon the evidence in the record, it apparently might have been proper to grant the application in a particular case, but whether the refusal of it has involved the violation of a clear legal right or a manifest abuse of judicial discretion. Texas Employers' Ins. Ass'n. v. Pillow, supra; San Antonio Gas Company v. Singleton, 24 Tex.Civ.App. 341, 59 S.W. 920, 922, writ of error refused.

In the case of Gowan v. Reimers, 220 S.W.2d 331 (Tex.Civ.App.) 1949, n. w. h., the court said:

"Motions of this character have perplexed the courts ever since early Statehood. They are said to be received with careful scrutiny and are held to address themselves largely to the discretion of the trial court under the facts of each particular case and that if the court has overruled the application it will not be reviewed in the absence of a showing of abuse of that discretion. Mitchell v. Bass, 26 Tex. 372. * * * "

■■■■ While we do not wish to be understood as condoning concealment of facts, whether willfully or otherwise, the question of whether appellee willfully or wrongfully concealed his visit to Dr. Freiberg, as well as the materiality of Dr. Freiberg's testimony was a matter within the sound discretion of the trial court. We are unable to say that this discretion was abused in the instant case.

The Point of Error is therefore overruled.

The appellant further complains that "The trial court erred in refusing to permit witness, Herbert S. Dillard, to give testimony impeaching appellee's witness, W. L. Coker, on the grounds that the Rule had been invoked and the tendered witness, Herbert S. Dillard, had heard a portion of W. L. Coker's testimony, all as set out in appellant's Bill of Exception No. 2."

During the trial of this case appellee, in order to corroborate the occurrence of his claimed accidental injury, produced a witness, Warner L. Coker, who testified that he was present when appellee was injured and that immediately after the alleged injury, the appellee complained of his side and back. Upon cross examination appellant's counsel confronted witness Coker with what purported to be his signed statement, dated May 29, 1963, wherein he stated that on the occasion in question the appellee did not make any complaint of injury to his back. Witness Coker denied having made such a statement and stated that he had not read the statement, inferring that the statement had been changed. Thereupon, when appellant was presenting its evidence, it tendered witness Herbert S. Dillard, appellant's claims representative, who had taken the written statement from W. L. Coker on May 29, 1963. Appellee's counsel objected to witness Dillard testifying in the case on the ground that the witness had been placed under the Rule and Dillard had been sitting in the courtroom at least a portion if not the entire time and had heard the testimony of said witness, W. L. Coker. The court sustained appellee's objection and refused to

permit Dillard to testify. At the beginning of the trial, the Rule was invoked and all witnesses were placed under the Rule. At the time, Dillard was not in the courtroom and was not placed under the Rule. On appellant's Bill of Exception, it was developed by the testimony of Dillard that Coker had told him at the time he took the statement the appellee, at the time of his alleged injury, did not complain with his back, that the statement was the same as it was at the time he took it, and that Coker did read it.

While the instant case was pending in this court on appeal and after the submission thereof, the Supreme Court of this state in the case of Southwestern Bell Telephone Company v. Johnson in its majority opinion handed down April 3, 1965, 389 S.W.2d 645, discussed this identical question. In that case, suit had been brought against the telephone company by plaintiff for damages for bodily injuries received when plaintiff was struck by a truck belonging to the telephone company. The telephone company produced a witness named Watson who testified for defendant and his testimony was allegedly contrary to what the witness Watson had told plaintiff's investigator Blakey. At the trial of the case, Blakey was not placed under the Rule and was sitting in the courtroom at least a portion of the time while Watson also testified. Following Watson's testimony, which was detrimental to plaintiff, the latter tendered Blakey as a witness to impeach witness Watson. The trial court refused to permit Blakey to testify. The Court of Civil Appeals of Beaumont, with one Justice dissenting, held that the trial court erred in refusing to allow Blakey's testimony, citing Johnson v. Cooley, 30 Tex.Civ.App. 576, 71 S.W. 34, 1902, n. w. h., and Holstein v. Grier, 262 S.W.2d 954 (Tex.Civ.App.) 1953, n. w. h. The Court of Civil Appeals held that under the facts, the trial court had no discretion, was compelled to permit the testimony and even though it was a matter of discretion with the trial court, the refusal

of the court to permit witness Blakey to testify was an abuse of discretion.

The Supreme Court in reversing the Court of Civil Appeals in the Telephone case said:

"* * * The question is not whether the action of the Court in disqualifying Blakey appears to us to have been required, but rather the question for decision is whether the Court abused its discretion. The trial judge had the discretionary authority to take into consideration all of the facts, including the fact that the voice recording was made with the intention that it be used at the trial and with the knowledge that Ray Blakey was the only person who could identify the recording. The plaintiff invoked the rule and should have seen that Blakey was placed under rule. We cannot say that the judge, in the exercise of his discretionary power, acted arbitrarily or unreasonably in disqualifying the proffered witness, Blakey. The action of the trial court should be upheld. 'The mere fact or circumstance that a trial judge may decide a matter within his discretionary authority in a manner different from what an appellate judge would decide if placed in a similar circumstance does not demonstrate that an abuse of discretion has occurred.' Jones v. Strayhorn, 159 Tex. 421, 321 S.W.2d 290 (1959)."

█ The primary, if not the only purpose, in taking the statement of Coker was for the very use that appellant attempted to use it, with the knowledge that Dillard was the only person by whom Coker could be impeached if he later denied in court as a witness the statement or any part thereof. We believe under the Telephone case the rule in the case at bar having been invoked (the record does not show by whom) appellant should have seen that Dillard was placed under rule. It is our view that the Telephone case controls the

question before us and under the facts presented, we are not prepared to hold that the judge abused his discretionary power in disqualifying the proffered witness Dillard.

Appellant relies upon Holstein v. Grier, supra; Johnson v. Cooley, supra, and Holder v. United States, 150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010. It is further our view that the Supreme Court in the Telephone case impliedly overruled these cases insofar as they concerned the question here under consideration.

Other assignments not discussed above have been considered and are deemed without merit and are overruled.

The judgment of the trial court is affirmed.